# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RESOURCE FINANCIAL CORPORATION, an Illinois Corporation,<br><br>    Plaintiff,<br><br> -vs-<br><br>THE INTERPUBLIC GROUP OF COMPANIES, INC., a Delaware Corporation, AKRAM MIKNAS, an Individual, and FADI SALAMEH, an Individual,<br><br>    Defendants. | FILED: JUNE 9, 2008<br>08CV3331<br>JUDGE KENNELLY<br>MAGISTRATE JUDGE ASHMAN<br>TG<br><br>No:<br><br>Jury Trial Demanded |

## COMPLAINT

Plaintiff, Resource Financial Corporation ("RFC"), for its Complaint against the Defendants, The Interpublic Group of Companies, Inc. ("IPG"), Akram Miknas ("Miknas"), and Fadi Salameh ("Salameh") (collectively referred to as "Defendants"), states as follows:

## PARTIES

1. Resource Financial Corporation is an Illinois corporation with its principal place of business in Chicago, Illinois. RFC is an investment banking firm specializing in providing strategic planning, financial advisory, investment banking, and corporate financial services with respect to acquisition search, deal and financial structuring, and finance placement.

2. IPG is a Delaware corporation with its principal place of business in New York, New York. IPG is a publicly held global advertising and marketing services company. IPG covers a range of marketing disciplines and specialties, from consumer advertising, direct marketing, to mobile and search engine marketing.

3. Miknas is an individual, and is a resident of Manama, Bahrain.

4. Salameh is an individual, and is a resident of Dubai, U.A.E.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332(a). The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens in different states and in which citizens who are subjects of a foreign state are additional parties, as RFC is an Illinois corporation with its principal place of business in Illinois, IPG is a Delaware corporation with its principal place of business in New York, and Miknas and Salameh are foreign residents.

6. This Court has personal jurisdiction over IPG, Miknas and Salameh, and venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(2), as the Northern District of Illinois is a district in which a substantial part of events or omissions giving rise to the claim occurred.

## NATURE OF ACTION

7. This is an action arising out of the unlawful conduct of Salameh, Miknas, and IPG, which culminated with the intentional breach by Salameh and Miknas of an Engagement Agreement (the "Agreement") with RFC, in which RFC agreed to act in a financial advisory and investment banking capacity to assist Miknas and Salameh in acquiring 100% of the issued and outstanding stock of Middle East Communication Networks Company W.L.L. ("MCN") and, thereafter, in acquiring the interests of certain minority interests in MCN subsidiaries and affiliates ("Minority Interests") as well as other private companies currently unrelated to MCN ("Targets"). IPG acted unlawfully by intentionally and tortiously interfering with the Agreement to induce and cause a breach of the Agreement.

8. Under the Agreement, Salameh and Miknas agreed to use RFC as their exclusive agent to represent them in negotiating, structuring, financing and finalizing a transaction where 100% of MCN would be acquired with an investor owning 51%, Miknas 34% and Salameh 15%.

9. RFC performed its obligations under the Agreement and, as a direct result of RFC's efforts, potential purchasers were identified by RFC and expressed substantial interest in acquiring MCN, substantially increasing the valuation of MCN in the market. Once the market valuation was increased due to RFC's efforts, Miknas and Salameh intentionally breached the Agreement by entering into a deal directly with IPG, wherein IPG obtained a 51% interest in MCN and MCN was valued at $250 million (the "IPG Deal"). Miknas and Salameh could not have secured the terms of the IPG Deal without RFC's efforts.

10. The IPG Deal is identical in structure to the deal outlined in the Agreement. Miknas and Salameh, however, at IPG's request and direction, excluded RFC from negotiating with IPG and did not use RFC to negotiate, structure, finance or finalize the IPG Deal, as required under the terms of the Agreement. Miknas and Salameh intentionally breached the Agreement by excluding RFC from negotiations with IPG and not using RFC as the exclusive agent for negotiating, structuring, financing and finalizing the IPG deal.

11. IPG knew of the Agreement between Miknas, Salameh and RFC. IPG, however, intentionally interfered with the Agreement in order to obtain MCN for itself and to preclude further competition for MCN. IPG intentionally excluded RFC from a meeting wherein IPG made an offer to acquire a 51% interest in MCN, based on a valuation of MCN at $250 million. IPG made this offer with full knowledge that RFC was acting as the exclusive agent of Salameh and Miknas in order to negotiate, structure, finance, and finalize such a deal. IPG, however, induced Miknas and Salameh to breach the Agreement with RFC and sell the 51% interest in MCN directly to IPG, without the involvement of RFC.

12. As a result of the Defendants' unlawful conduct, RFC has suffered damages in excess of $75,000.00.

## FACTS COMMON TO ALL COUNTS

13.     On April 26, 2007, Salameh contacted Russell Stepke, a principal of RFC, to arrange a meeting in Chicago regarding potential business transactions and opportunities.

14.     On May 6, 2007, Salameh met with Mr. Stepke in Chicago. He informed Mr. Stepke that he and Miknas were majority shareholders in MCN, with Miknas being the controlling shareholder. At this meeting, Salameh explained that he was seeking to sell substantially all of his stock in MCN, and that the controlling shareholder, Miknas, was willing to allow him to sell.

15.     After the May 6, 2007 meeting, Mr. Stepke on behalf of RFC contacted investors to determine whether there was interest in buying Salameh's shares in MCN. RFC identified a potential investor, NBD Sana. Over the course of the next several months, NBD Sana and MCN exchanged information, wherein it was confirmed that Salameh owned 24.6% of MCN and Miknas held 55.4% of MCN, and that IPG held 19.9%. In addition, it was learned that IPG had a right of first refusal on the sale of Miknas' and Salameh's MCN stock. IPG's right of first refusal posed a potential barrier to obtaining serious offers for MCN stock or offers that were not undervalued.

16.     To unlock the value of the stock, RFC suggested that Salameh and Miknas join with NBD Sana in forming a new corporation to acquire 100% of the issued and outstanding capital stock of MCN, to which they agreed. Ultimately, however, negotiations failed and the proposed transaction with NBD Sana did not materialize.

17.     On January 6, 2008, Salameh and Miknas discussed with Mr. Stepke, who was in Chicago, the possibility of RFC representing their interests in a potential transaction, which was akin to the one that had been proposed with NBD Sana, where Salameh, Miknas, and an investor, would join together to acquire 100% of MCN, with the investor owning 51% of the new

company, Miknas 34%, and Salameh 15%. The parties ultimately agreed to the representation and agreed to the basic terms of the representation.

18.     On January 17, 2008, the terms of the parties' agreement were finalized. It was agreed that RFC would reduce the agreement to writing and tender the agreement to Salameh and Miknas. Under the agreement, Salameh and Miknas agreed to pay an initial and monthly retainers. Salameh and Miknas also agreed to pay "Success Fees" based on the total agreed consideration of any transaction.

19.     RFC drafted the Agreement in Chicago and it was made effective on January 28, 2008. A copy of the Agreement is attached hereto as Exhibit A. Upon the execution of the Agreement, Salameh and Miknas paid a $25,000 retainer to RFC pursuant to the terms of the Agreement. Payment of the retainer was made to RFC in Chicago.

20.     RFC immediately began performing its obligations under the Agreement by soliciting potential private equity firms to invest in a deal with MCN. RFC's efforts produced interest in the transaction and RFC, in fact, obtained a proposal for the potential transaction valuing MCN at $250 million.

21.     On February 15, 2008, IPG made an offer to Salameh and Miknas, which valued MCN at $200 million. The offer was unsatisfactory to Salameh and Miknas, as it reflected an undervaluation of MCN.

22.     On March 1, 2008, Mr. Stepke met with Salameh, Miknas, Peter Davies, and Mohammed Dadabhai (MCN CFO), to discuss the proposals and other potential investors that may be interested in acquiring a 51% interest in MCN. Salameh, Miknas and Dadabhai suggested meeting with IPG to discuss IPG as a possible party to the transaction. Salameh and Miknas told Mr. Stepke that, at the meeting with IPG, they wanted him to deliver to IPG a

current proposal from another potential investor that valued MCN at $250 million, with the intention of causing IPG to offer a proposal along the same terms. Salameh and Miknas stated that they wanted Mr. Stepke to deliver this proposal to IPG at a meeting which they had scheduled the next day with Jon Burleigh (the head of M&A at IPG).

23. On March 2, 2008, Mr. Stepke, at Salameh's direction, showed Burleigh the investors' term sheet, valuing MCN at $250 million. Subsequent to tendering the investors' term sheet to Burleigh, the meeting was adjourned.

24. After the March 2, 2008 meeting, Mr. Stepke sent numerous emails and made numerous phone calls to Salameh and Miknas to continue to negotiate a deal with IPG. Salameh and Miknas never responded. Michael Roth (IPG Chairman and COO) as well as Burleigh had told Salameh and Miknas that they did not want Mr. Stepke to be part of the meeting, and that Mr. Stepke would no longer be needed.

25. During the course of the March 2008 meetings, from which Mr. Stepke was excluded, IPG made an offer to acquire 51% interest in MCN, which offer valued MCN at $250 million. The offer was accepted by Salameh and Miknas. The structure of the IPG deal was identical to the proposed deal structured by RFC under the Agreement. Salameh and Miknas obtained a high valuation for MCN in the IPG Deal. This significant valuation of MCN was a direct result of RFC's efforts under the Agreement.

26. Based on the unlawful and improper conduct of Salameh and Miknas and IPG, Salameh and Miknas breached the Agreement. As a result of the breach, RFC suffered damages in excess of $75,000.00.

## COUNT I - BREACH OF CONTRACT
## AGAINST SALAMEH AND MIKNAS

27.     RFC restates and realleges the allegations set forth in Paragraphs 1 through 26 above, as if fully set forth herein.

28.     The Agreement is a valid and enforceable agreement entered into between RFC, Salameh, and Miknas.

29.     RFC performed its obligations under the Agreement.

30.     The Agreement provided that Salameh and Miknas would use RFC as exclusive agent for Miknas and Salameh and a third-party investor to acquire 100% of the issued and outstanding stock of MCN. Salameh and Miknas agreed to use RFC as the exclusive agent to negotiate, structure, finance and finalize any such transaction. Salameh and Miknas breached the Agreement by entering into the IPG deal with IPG directly and intentionally excluding RFC from the negotiations, structuring, financing and finalization of the IPG Deal.

31.     As a result of Salameh's and Miknas's breach, RFC suffered damages in excess of $75,000.00.

WHEREFORE, Plaintiff, Resource Financial Corporation, Inc., requests this Court to enter judgment in its favor and against Defendants, Fadi Salameh and Akram Miknas, in an amount in excess of $75,000.00, plus interest, and such other relief as this Court deems fair and just.

## COUNT II - TORTIOUS INTERFERENCE WITH CONTRACT
## AGAINST IPG

32.     RFC restates and realleges the allegations set forth in Paragraphs 1 through 31 above, as if fully set forth herein.

33.     At all times relevant herein, there existed a valid, enforceable agreement between RFC and Salameh and Miknas, which required that Salameh and Miknas use RFC as the

exclusive agent to negotiate, structure, finance and finalize any deal involving the acquisition of a majority interest in MCN.

34. IPG knew of the Agreement between Miknas, Salameh, and RFC, and knew that RFC was acting as the exclusive agent in negotiating, structuring, financing and finalizing a stock purchase of MCN.

35. In fact, on March 2, 2008, IPG attended a meeting with Salameh, Miknas, and Mr. Stepke of RFC, to discuss a potential transaction involving MCN. At this meeting, RFC was acting as the exclusive agent in negotiating and structuring any deal involving MCN.

36. After that meeting, IPG instructed Miknas and Salameh not to talk with RFC or Mr. Stepke, in order to obtain a 51% interest in MCN itself and to avoid any further competition from other potential investors.

37. By excluding RFC from negotiations involving a stock purchase of MCN and to obtain MCN for itself without any further outside competition, IPG intentionally induced Miknas and Salameh to breach the Agreement without justification or privilege. As a result of IPG's intentional exclusion of RFC in the IPG Deal, IPG directly and proximately induced and caused a breach of the Agreement by Miknas and Salameh.

38. IPG's inducement of Miknas and Salameh to breach the Agreement has caused RFC damages in excess of $75,000.00.

WHEREFORE, Plaintiff, Resource Financial Corporation, Inc., requests this Court to enter and Order in its favor and against Defendant, The Interpublic Group of Companies, Inc., in an amount in excess of $75,000.00, plus interest, and such other relief as this Court deems fair and just.

                                         RESOURCE FINANCIAL CORPORATION, INC.

                                         By:  /s/ William M. McErlean
                                                   One of its Attorneys

William M. McErlean
Charla L. Hausler
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois 60606
(312) 357-1313

CHDS01 CUH 467291v2