EXHIBIT "A"



550 West Van Buren, Suite 1410
Chicago, Illinois 60607
Phone: (312) 525-2600
Fax: (312) 525-2610
www.resource-financial.com

January 28, 2008

*Private & Confidential*

Mr. Akram Miknas
Mr. Fadi Salameh
c/o Middle East Communications Network
4th Floor – Wing B
Emarat Atrium Building
Sheikh Zayed Road
Dubai, U.A.E.

RE: Revised Engagement Agreement

Gentlemen:

Resource Financial Corporation ("RFC") proposes to act in financial advisory and investment banking capacity to assist Akram Miknas, Fadi Salameh and a third party investor d/b/a "P7 Holdings, Inc.," a to be formed Bahrainian company (collectively referred to hereinafter as "P7") in acquiring 100% of the issued and outstanding stock of Middle East Communication Networks Company W.L.L. ("MCN") and, thereafter, in acquiring, whether for cash or stock, the interests of certain minority interests in MCN subsidiaries and affiliates ("Minority Interests") as well as other private companies currently unrelated to MCN ("Targets").

RFC is an investment banking firm specializing in providing strategic planning, financial advisory, investment banking and corporate finance services with respect to acquisition search, deal and financial structuring and finance placement. RFC has extensive experience in acquiring companies and has successfully acquired companies that were not actively being marketed for sale at the time of initial contact. Furthermore, RFC has intimate knowledge of MCN and believes it can be of

Mr. Akram Miknas
Mr. Fadi Salameh
January 28, 2008
Page 2 of 6

significant aid to P7 in investing in and acquiring MCN, the Minority Interests and the Targets.

## AGREEMENT

RFC agrees to assist P7 for the following purposes:

1. Developing a valuation and deal structure for purposes of acquiring MCN ("First Transaction" or "T1");

2. Assisting P7 in structuring and negotiating T1 through to a Letter of Intent, the terms and conditions of which are acceptable to MCN's shareholders; and

3. Developing, structuring, negotiating and arranging financing required to complete T1; and

4. Advising P7 on closing the Transaction, including administration of the closing process; and

5. Following completion of T1, develop the "MI Rollup Plan," including valuations of the MIs to be rolled up (the "Second Transaction" or "T2"); and

6. Negotiate, structure, finance and finalize T2;

7. Assist P7 in acquiring one or more Targets ("Third Transaction" or "T3"), including the negotiations, structuring, financing and finalizing of T3; and

8. Advise P7 on the possible sale of MCN post-T1, and T2 (and T3, if completed before sale) ("Fourth Transaction" or "T4").

9. Together, T1, T2, T3 and T4 are herein collectively referred to as the "Transactions."

P7 agrees to employ RFC as an exclusive agent for the purposes herein set forth and, further to compensate RFC as follows:

Mr. Akram Miknas
Mr. Fadi Salameh
January 28, 2008
Page 3 of 6

1. **Term.** The term of this Agreement shall be for a period of twelve (12) months, terminable by P7 at anytime after the initial three months (the "Initial Term") and upon thirty (30) days advanced written notice. Unless otherwise terminated, this Agreement shall extend from month to month at the end of the initial term.

2. **Initial Retainer.** Upon the execution of this Agreement, P7 shall pay to RFC an initial retainer of $25,000.

3. **Monthly Retainers.** On each monthly anniversary date during the term hereof until T1 is closed or abandoned, a monthly retainer in the amount of $25,000. Thereafter, if P7 elects to continue employing RFC for purposes of T2, T3 and/or T4, a monthly retainer of $25,000 will continue until the contemplated transaction is closed or abandoned.

4. **Success Fees.** After credit for previously paid retainers, and subject to the conditions set forth below, the compensation due via wire transfer simultaneous to and conditioned upon a closing of a Transaction shall be as follows:

| Total Agreed Transaction Consideration | |
|---|---|
| To US$10 million | 5.0%, Plus |
| Above US$10.0 million to US$50.0 million | 3.0% |
| Above US$50.0 million to US$100.0 million | 2.0% |
| Above US$100.0 million to US$300.0 million | 1.0% |
| Above US$300.0 million | 0.5% |

   A. **Messrs. Miknas and Salameh Control.** Compensation due RFC in a transaction involving the acquisition of MCN by P7 where the controlling interest in P7 is owned by Messrs. Miknas and Salameh shall be the greater of $750,000 or 1% of the total value of the cash disbursed at closing provided, however, in the event the fee is the minimum fee of $750,000, P7 shall have a $120,000 credit on any and all fees that may come due RFC as a result of T4.

Mr. Akram Miknas
Mr. Fadi Salameh
January 28, 2008
Page 4 of 6

B. <u>T1 with investor controlling P7</u>. In the event of a transaction involving investor control of P7 immediately following the closing of T1, fee compensation based upon the above schedule.

C. <u>T2 and T3 transactions</u>. Commercially reasonable fees with respect to T2 and T3 transactions are to be agreed upon prior to RFC's beginning such assignments.

D. <u>T4</u>. Per the above schedule subject to the possible credit for T1 fees as aforestated.

5. <u>Miscellaneous Terms</u>.

A. In addition to Success Fees above enumerated, and not contingent upon completion of the Transactions, P7 will reimburse RFC for all of RFC's reasonable out-of-pocket expenses, including communications, database and research charges, travel, housing, printing and other related expenses upon presentation of an invoice therefore.

B. The term of this Engagement Agreement is as above set forth, however, P7 may terminate RFC's services at any time after three (3) months from the date hereof, upon thirty (30) days advance written notice; provided, however, P7 shall remain obligated to pay RFC the fees described above should a Transaction occur within eighteen (18) months of termination involving MCN employing the financing structure and sources developed by RFC.

C. The termination of RFC's services herein shall not release MCN from its obligation to pay the retainer due through the date of termination as set forth above, or to reimburse out-of-pocket expenses through the date of such termination, and all other obligations herein described.

D. Should a Transaction be consummated, RFC may include, at its expense, a tombstone or similar promotional notice in selected periodicals.

E. This Engagement Agreement will be governed and construed in accordance with the laws of England and Wales, which laws will be

Mr. Akram Miknas
Mr. Fadi Salameh
January 28, 2008
Page 5 of 6

binding upon, inure to the benefit of, and be enforceable by the parties or their respective successors.

F. Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination shall be referred to and finally resolved by arbitration under the London Court of International Arbitration (LCIA) Rules, which Rules are deemed to be incorporated by reference into this clause
  (i)   The number of arbitrators shall be one.
  (ii)  The place of arbitration shall be London, England.
  (iii) The language to be used in the arbitral proceedings shall be English.
  (iv)  The governing law of the Agreement, as above stated, shall be the substantive law of England and Wales.

G. P7, for its part, agrees to provide RFC with reasonable cooperation and assistance in the discharge of its duties as herein described.

(This space left intentionally blank.)

Mr. Akram Miknas
Mr. Fadi Salameh
January 28, 2008
Page 6 of 6

If the above and foregoing correctly represents an acceptable Agreement, please execute the enclosed duplicate original of the same and return to the undersigned. At the time RFC receives an executed copy of this Agreement together with the Initial Retainer of $25,000, it will begin its activities on P7's behalf. We look forward to working with P7 to complete the Transactions.

RESOURCE FINANCIAL CORPORATION

By: _____
(authorized signature)

ACCEPTED and agreed to this
30 day of January, 2008.

_____
AKRAM MIKNAS

_____
FADI SALAMEH

573-25