# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

RESOURCE FINANCIAL CORPORATION,
an Illinois Corporation,

    Plaintiff,

    v.

THE INTERPUBLIC GROUP OF
COMPANIES, INC., a Delaware Corporation,
AKRAM MIKNAS, an Individual, and FADI
SALAMEH, an Individual,

    Defendants.

    Case No. 08 CV 3331

    Judge Kennelly

    Magistrate Judge Ashman

**DEFENDANT INTERPUBLIC'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS AND TO STAY DISCOVERY**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ............................................................................................2

ARGUMENT.................................................................................................................5

I.      Plaintiff Has Failed to State a Claim for Tortious  Interference with
        Contract...........................................................................................................5

        A.      Plaintiff Has Failed to State a Claim for Tortious Interference with
                Contract Because It Has Failed to Allege a Breach of Contract.................6

        B.      Plaintiff Has Failed to State a Claim for Tortious Interference with
                Contract Because It Has Failed to Allege Intentional Inducement...........10

II.     Discovery Should Be Stayed Pending the Outcome of Interpublic's
        Request for Dismissal Under Federal Rule 12(b)(6) .............................................12

III.    In the Alternative, This Litigation Should Be Stayed Pending Resolution
        of Plaintiff's Arbitration with Defendants Miknas and Salameh .........................14

CONCLUSION...........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bell Atl. Corp.* v. *Twombly*,
    127 S.Ct. 1955 (2007)........................................................................ 5, 10-11

*Bilal* v. *Wolf*,
    2007 WL 1687253 (N.D. Ill. June 6, 2007)............................................12

*Builders Ass'n of Greater Chicago* v. *City of Chicago*,
    170 F.R.D. 435 (N.D. Ill. 1996)...........................................................12

*Cataldo* v. *City of Chicago*,
    2002 WL 91903 (N.D. Ill. Jan. 24, 2003) ........................................12, 14

*Cemail* v. *Viking Dodge, Inc.*,
    1997 WL 359962 (N.D. Ill. June 17, 1997) ......................................12, 14

*Cohen* v. *Taco Bell Corp.*,
    147 F.R.D. 154 (N.D. Ill. 1993)...........................................................14

*Crawford-El* v. *Britton*,
    523 U.S. 574 (1998)............................................................................12

*First Nat'l Bank of Ariz.* v. *Cities Serv. Co.*,
    391 U.S. 253 (1968)............................................................................13

*Fredrick* v. *Simmons Airlines, Inc.*,
    144 F.3d 500 (7th Cir. 1998) ..............................................................6

*George A. Fuller Co., A Div. of Northrop Corp.* v.
    *Chi. College of Osteopathic Med.*,
    719 F.2d 1326 (7th Cir. 1983) ............................................................6

*Halim* v. *Great Gatsby's Auction Gallery*,
    516 F.3d 557 (7th Cir. 2008) ..............................................................14

*Hill* v. *Amoco Oil Co.*,
    2001 WL 2923628 (N.D. Ill. Mar. 19, 2001) ......................................12

*Kessinger* v. *Grefco, Inc.*,
    875 F.2d 153 (7th Cir. 1989) ..............................................................11

*Kinesoft Dev. Corp.* v. *Softbank Holdings, Inc.*,
   139 F. Supp. 2d 869 (N.D. Ill. 2001) ........................................................6

*King* v. *Burlington Northern and Santa Fe Ry. Co.*,
   445 F. Supp. 2d 964 (N.D. Ill. 2006) ......................................................15

*Moline* v. *Trans Union, L.L.C.*,
   224 F.R.D. 346 (N.D. Ill. 2004) ..............................................................12

*Peregrine Options, Inc.* v. *Farley, Inc.*,
   1993 WL 78646 (N.D. Ill. Mar. 18, 1993) ..............................................12

*Sprague* v. *Brook*,
   149 F.R.D. 575 (N.D. Ill. 1993) ........................................................12-13

*Stokes* v. *City of Chicago*,
   1986 WL 12311 (N.D. Ill. Oct. 24, 1986) ...............................................13

*Szunny* v. *Am. Gen. Fin., Inc.*,
   246 F.3d 1065 (7th Cir. 2001) ..................................................................5

*Walsh* v. *Heilmann*,
   472 F.3d 504 (7th Cir. 2006) ...................................................................13

**STATE CASES**

*Am. States Ins. Co.* v. *Bailey*,
   675 N.E.2d 939 (Ill. App. Ct. 1996) ..................................................10, 12

*Burton* v. *Airborne Express, Inc.*,
   857 N.E.2d 707 (Ill. App. Ct. 2006) ..........................................................7

*Certified Mech. Contractors, Inc.* v. *Wright & Co., Inc.*,
   515 N.E.2d 1047 (Ill. App. Ct. 1987) ........................................................6

*Exch. Nat'l Bank* v. *Farm Bureau Life Ins. Co. of Mich.*,
   438 N.E.2d 1247 (Ill. App. Ct. 1982) ...................................................9-11

*Kehoe* v. *Saltarelli*,
   786 N.E.2d 605 (Ill. App. Ct. 2003) ........................................5-6, 9-11

*Martin* v. *Fed. Life Ins. Co.*,
   440 N.E.2d 998 (Ill. App. Ct. 1982) ........................................................10

*Purmal* v. *Robert N. Wadington and Assocs.*,
   820 N.E.2d 86 (Ill. App. Ct. 2004) ............................................................9

*Vuagiaux* v. *Korte*,
   652 N.E.2d 840 (Ill. App. Ct. 1995) ..........................................................8

**OTHER AUTHORITIES**

FED. R. CIV. P. 26 ............................................................................................. 1, 12

FED. R. CIV. P. 12 ...................................................................................... 1, 5, 12, 15

## PRELIMINARY STATEMENT

Plaintiff Resource Financial Corporation ("RFC" or "Plaintiff") alleges that Defendant The Interpublic Group of Companies, Inc. ("Interpublic") induced two individual investors, Akram Miknas ("Miknas") and Fadi Salameh ("Salameh"), to breach a January 28, 2008 letter agreement (the "Agreement"), attached as Exhibit A to the Complaint (*see* Docket No. 24), to pay RFC a commission allegedly due on a sale of the investors' interests in an advertising company. Plaintiff has now conceded that its breach claim against Miknas and Salameh must be arbitrated. Plaintiff's remaining interference claim against Interpublic should be dismissed for two independent reasons.

**First**, under the explicit terms of the contract, RFC is not entitled to a commission on the transaction alleged in the Complaint, so the individual investors could not have breached the agreement when they "failed" to pay a commission. Because RFC has no entitlement to any commission, there was no contractual breach and Interpublic could not have "interfered" with RFC's alleged rights. Just as RFC brought its Complaint against the individual investors in defiance of the clear arbitration clause in the Agreement, it has purported to allege claims of interference against Interpublic without any conceivable colorable basis.

**Second**, RFC has failed to allege facts showing what Interpublic purportedly did to "interfere" with RFC's contract with the individual investors. The closest the Complaint comes is an allegation that Interpublic "instructed" the individual investors "not to deal" with RFC. This allegation is false. All Interpublic did was exercise a right of first refusal to buy the individual investors' interest – a right that RFC was well aware of when it signed the Agreement. But even accepting it as true for the

purposes of this motion, it does not amount to interference. Interpublic had no power to "instruct" anyone not to deal with RFC. Nor does the Complaint explain how this "instruction" was conveyed, or what effect it had. In fact, the Complaint actually alleges that RFC performed all of its obligations under the Agreement – negating any inference that Interpublic interfered with RFC's rights.

Because the Complaint plainly discloses all of the facts necessary to dismiss the interference claim, discovery should be stayed pending the resolution of the motion. There is no evidence that RFC could reasonably hope to obtain in discovery that will somehow strip the Agreement of its plain meaning. Commencing discovery now, however, would impose significant costs on Interpublic, including discovery in the United Arab Emirates and Bahrain.

In the alternative, this litigation should be stayed pending the outcome of Plaintiff's arbitration with Miknas and Salameh. Simply put, if RFC collects a judgment from Miknas and Salameh for breach of the Agreement, then it will have been made whole again and will not have any basis to claim damages from Interpublic as well. If RFC loses its arbitration, then as a matter of law there will have been no breach of the Agreement, and RFC will not have an actionable claim against Interpublic. Plaintiff's claim will be resolved in the arbitration. Accordingly, this case should be stayed.

## STATEMENT OF FACTS[1]

In 2007, Defendants Miknas, Salameh and Interpublic were joint owners of Middle East Communication Networks Company W.L.L. ("MCN"), an advertising company based in Dubai, in which Miknas owned 55.4%, Salameh owned 24.6%, and

---

[1] Although the allegations in Plaintiff's Complaint are false, Interpublic accepts them as true for the limited purposes of this motion.

Interpublic owned 19.9%. (Cmplt. at ¶ 15.) Interpublic "had a right of first refusal on the sale of Miknas' and Salameh's MCN stock." (*Id.*)

On January 28, 2008, Plaintiff executed the Agreement with Miknas and Salameh whereby Plaintiff was to act in the following capacity in connection with Miknas and Salameh's ownership interest in MCN:

> Resource Financial Corporation ("RFC") proposes to act in financial advisory [sic] and investment banking capacity to assist Akram Miknas, Fadi Salameh and a third party investor d/b/a "P7 Holdings, Inc.," a to be formed Bahrainian company (collectively referred to hereinafter as "P7") *in acquiring 100% of the issued and outstanding stock* of Middle East Communications Networks Company W.L.L. (MCN") and, thereafter, in acquiring, whether for cash or stock, the interests of certain minority interests in MCN subsidiaries and affiliates ("Minority Interests") as well as other private companies currently unrelated to MCN ("Targets").

(Cmplt., Ex. A at 1 (emphasis added).) Plaintiff would then assist P7 Holdings, Inc. ("P7") in accomplishing four separate transactions to complete the acquisition of 100% of MCN. (*Id.* at 2.) P7 was obligated to compensate Plaintiff by paying certain retainers and "success fees" for each of the four transactions according to a certain rate worked out in the Agreement. (*Id.* at 2-3.) Once the Agreement was executed, Plaintiff then "began performing its obligations under the Agreement by soliciting private equity firms to invest in a deal with MCN." (Cmplt. at ¶ 20.)

According to the Complaint, on March 2, 2008, Russell Stepke, a principal of Plaintiff, met with Jon Burleigh of Interpublic at the suggestion of Miknas and Salameh and "showed Burleigh the investors' term sheet, valuing MCN at $250 million." (Cmplt. ay ¶ 23.) Plaintiff alleges that Interpublic had already "made an offer to Salameh

and Miknas, which valued MCN at $200 million[,]" which had been rejected. (*Id.* at ¶ 21.)

After the March 2 meeting, according to Plaintiff, Miknas and Salameh "never responded" to Plaintiff's follow-up communications and "Michael Roth ([Interpublic] Chairman and COO) as well as Burleigh had told Salameh and Miknas that they did not want Mr. Stepke to be part of the meeting, and that Mr. Stepke would no longer be needed." (Cmplt. at ¶ 24.) Subsequently, Interpublic "made an offer to acquire 51% interest in MCN, which offer valued MCN at $250 million" (the "Interpublic Deal"). (*Id.* at ¶ 25.) Miknas and Salameh accepted this offer. (*Id.*) Plaintiff further alleges that "[t]he structure of the [Interpublic] deal was identical to the proposed deal structured by RFC under the Agreement." (*Id.*) This is demonstrably false under the terms of the Agreement and the allegations in the Complaint. (*Id.* at ¶ 25; Ex. A at 1-3.)

According to Plaintiff, Interpublic "knew of the Agreement ... and knew that RFC was acting as the exclusive agent in negotiating, structuring, financing and finalizing a stock purchase of MCN." (Cmplt. at ¶ 34.) Plaintiff further alleges that, after the March 2 meeting, Interpublic "instructed Miknas and Salameh not to talk with RFC or Mr. Stepke" and thereby "intentionally induced Miknas and Salameh to breach the Agreement without justification or privilege." (*Id.* at ¶¶ 36-37.) Plaintiff does not allege that Interpublic's exercise of its right of first refusal was improper. (*Id.* at ¶¶ 15, 32-38.) Plaintiff does claim that it "performed its obligations under the Agreement." (*Id.* at ¶ 29.) Plaintiff does not allege that the Agreement was terminated. (*Id.* at ¶¶ 1-38.)

# ARGUMENT

## I.    Plaintiff Has Failed to State a Claim for Tortious Interference with Contract

In considering a motion made pursuant to Federal Rule 12(b)(6), a court should accept as true all of the allegations made in the complaint and draw all reasonable inferences in favor of the plaintiff. *Szunny* v. *Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001). As the Supreme Court recently stated, however:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations … a plaintiff's obligation to prove the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.

*Bell Atl. Corp.* v. *Twombly*, 127 S.Ct. 1955, 1959 (2007) (internal citations and brackets omitted).[2] Accordingly, if a complaint, even with the benefit of every favorable inference, does not plausibly entitle a plaintiff to relief, the complaint should be dismissed. *Id.*

To state a claim for tortious interference with contract, a plaintiff must plead the following:

> (1) the existence of a valid enforceable contract between the plaintiff and a third party; (2) the defendant was aware of the contract; (3) defendant intentionally and unjustifiably induced a breach of the contract; (4) defendants' wrongful

---

[2] The Supreme Court went on to observe that "[i]t is no answer to say that a claim just shy of plausible entitlement can be weeded out early in the discovery process, given the common lament that the success of judicial supervision in checking discovery abuse has been modest." *Id.*

conduct caused a subsequent breach of the contract by the
third party; and (5) the plaintiff was damaged as a result.

*Kehoe* v. *Saltarelli*, 786 N.E.2d 605, 612 (Ill. App. Ct. 2003) (citing *Strosberg* v. *Brauvin*

*Realty Servs., Inc.*, 691 N.E.2d 834, 845 (1998)).[3]  If a plaintiff does not adequately plead

all of these elements, the complaint will not survive a motion to dismiss.  *Id.*

> A.     Plaintiff Has Failed to State a Claim for Tortious
>        Interference with Contract Because It Has Failed to
>        Allege a Breach of Contract

A plaintiff can satisfactorily plead the breach element of tortious

interference with contract if it alleges "a breach of contract, termination of contractual

relations, or rendering performance impossible."  *George A. Fuller Co., A Div. of*

*Northrop Corp.* v. *Chi. College of Osteopathic Med.*, 719 F.2d 1326, 1331 (7th Cir.

1983); *accord Certified Mech. Contractors, Inc.* v. *Wright & Co., Inc.*, 515 N.E.2d 1047,

1052 (Ill. App. Ct. 1987) (citing *George A. Fuller*).  In its Complaint, Plaintiff claims that

Miknas and Salameh breached the Agreement, and that Interpublic induced them to do

so.  Specifically, Plaintiff claims that the Agreement "required that Salameh and Miknas

use RFC as the exclusive agent to negotiate, structure, finance and finalize any deal

involving the acquisition of a majority interest in MCN." (Cmplt. at ¶ 33.)  Plaintiff

further claims that, pursuant to the Agreement, it "was acting as the exclusive agent in

negotiating and structuring any deal involving MCN."  (*Id.* at ¶ 34.)  Because Interpublic

"instructed Miknas and Salameh not to talk with RFC or Mr. Stepke," Plaintiff claims,

---

[3]     Interpublic assumes for the limited purposes of this motion that Illinois law applies to RFC's
claim.  "A court sitting in diversity applies the choice-of-law rules of the state in which it
sits."  *Fredrick* v. *Simmons Airlines, Inc.*, 144 F.3d 500, 503 (7th Cir. 1998).  With respect to
tort claims, Illinois choice-of-law rules "apply the most significant relationship test by using
the principles set forth in the Restatement (Second) of Conflicts of Laws §§ 6 and 145."
*Kinesoft Dev. Corp.* v. *Softbank Holdings Inc.*, 139 F. Supp. 2d 869, 905 n.17 (N.D. Ill. 2001).

Interpublic caused Miknas and Salameh to breach this Agreement, and Plaintiff is owed a commission from the Interpublic Deal. (*Id.* at ¶ 36.)

The plain language of the Agreement, however, makes clear that no breach ever took place. Whether the language of the Agreement is clear or ambiguous is "a question of law to be determined only from the terms of the contract." *Burton* v. *Airborne Express, Inc.*, 857 N.E.2d 707, 715 (Ill. App. Ct. 2006) (citations omitted). Here, the Agreement is clear on its face: it simply says that Plaintiff is to act "in a financial advisory and investment banking capacity" in assisting Miknas and Salameh, along with "a third party investor," in "*acquiring 100% of the issued and outstanding stock*" of MCN. (Cmplt., Ex. A at 1 (emphasis added).) The Agreement makes no reference to a deal in which Miknas and Salameh *sell* their interest in MCN to Interpublic (or to any other party, for that matter). (*Id.*) Although Plaintiff claims that "the structure of the [Interpublic] deal was identical to the proposed deal structured by RFC under the Agreement[,]" this contention is contradicted by the very facts alleged in Plaintiff's Complaint, since Plaintiff also acknowledges that the Interpublic Deal was one where Interpublic "acquired" a majority interest in MCN from Miknas and Salameh, while the Agreement plainly contemplated a deal in which Miknas and Salameh would themselves acquire "100%" of MCN. (*See* Cmplt. at ¶ 25.) In other words, all Interpublic did was to exercise its right of first refusal – which Plaintiff acknowledges it had every right to do. (*Id.* at ¶¶ 15, 32-38.)

Moreover, the Agreement specified a deal in which Miknas and Salameh would join with a third party in "a to be formed Bahrainian company" called "P7 Holdings, Inc." to acquire 100% of MCN. (Cmplt., Ex. A at 1.) Yet Plaintiff nowhere

alleges that Interpublic formed a Bahrainian company (or any company at all) with Miknas and Salameh called P7 Holdings, Inc. (or anything else) to carry out its deal. The Agreement also specifies that four separate transactions will be undertaken to accomplish the acquisition of 100% of MCN. (*Id.* at 2.)  But Plaintiff does not allege – nor could it – that the Interpublic Deal consisted of more than one transaction.

As for Plaintiff's claimed commission, the Agreement is clear that any obligation to pay RFC is undertaken by P7.[4]  Yet nowhere in the Complaint does Plaintiff allege that P7 was ever even formed. (*See* Cmplt. at ¶¶ 1-38.)  Thus, RFC could not possibly be owed a commission for any transaction under the Agreement since a condition precedent to the Agreement – the formation of P7 – never took place. *See Vuagiaux* v. *Korte*, 652 N.E.2d 840, 845 (Ill. App. Ct. 1995) (no breach of contract as a matter of law where condition precedent to contract was not satisfied).

The Agreement by its plain terms is one where Plaintiff agrees to act as an agent to find a third party to join with Miknas and Salameh in buying 100% of MCN. That is all that it says.  It does not say that Plaintiff is to act as agent in a direct transaction with Interpublic.  Such a contract would be absurd; Miknas and Salameh would have no need to retain an agent to find a party that *already was part-owner of MCN and had a right of first refusal.*  Thus, Plaintiff's contention that it was "exclusive agent to negotiate, structure, finance and finalize *any* deal involving the acquisition of a majority interest in MCN" is flatly belied by the plain language of the Agreement, which only covers an acquisition of a majority interest in MCN by Miknas, Salameh, and a third party through the purported P7 Holdings, Inc.  (Cmplt. at ¶ 33 (emphasis added).)

---

[4]  *See* Cmplt., Ex. A at 2-4: "P7 agrees .. to compensate RFC as follows" (setting forth retainers, "success fees," and out-of-pocket expenses owed to RFC by P7).

8

Because the Agreement does not govern the Interpublic Deal, Miknas and Salameh could not have breached it by entering into the Interpublic Deal. Thus, as a matter of law, Plaintiff cannot have stated an action for tortious interference with contract. *See Purmal* v. *Robert N. Wadington and Assocs.*, 820 N.E.2d 86, 99 (Ill. App. Ct. 2004) (finding that, without a breach, no claim for tortious interference with contract had been stated); *Kehoe*, 786 N.E.2d at 612 (because plaintiff's complaint had failed "to adequately allege" how defendants' conduct caused an actual breach, plaintiff had "failed to make a case for tortious interference"); *Exch. Nat'l Bank* v. *Farm Bureau Life Ins. Co. of Mich.*, 438 N.E.2d 1247, 1249 (Ill. App. Ct. 1982) (same).

Even though the plain language of the Agreement makes clear that Plaintiff has not alleged, and cannot allege, an actual breach of the Agreement caused by the Interpublic Deal, Plaintiff cannot rescue its tortious interference claim by claiming frustration of performance or termination of the Agreement. The Complaint pleads neither. To the contrary, Plaintiff has affirmatively pled that it "performed its obligations under the Agreement." (*Id.* at ¶ 29.) It makes no sense that Plaintiff could have performed under the Agreement, yet have also been prevented from "negotiating, structuring, financing and finalizing a stock purchase of MCN" by Interpublic's purported "interference," since that is what constitutes Plaintiff's performance obligation under the Agreement. And Plaintiff does not – and cannot – allege that Interpublic prevented Miknas and Salameh from performing, *i.e.*, paying RFC its claimed commission. (*See* Cmplt. at ¶¶ 32-38.) Consequently, Plaintiff's only recourse to maintain a tortious interference with contract claim is to allege a breach of the Agreement, which it cannot do.

B.  Plaintiff Has Failed to State a Claim for Tortious
Interference with Contract Because It Has Failed to
Allege Intentional Inducement

Plaintiff is also required to allege plausible facts showing that Interpublic

intentionally induced Miknas and Salameh's alleged breach of the Agreement. *Twombly*,

127 S.Ct. at 1949; *Kehoe*, 786 N.E.2d at 612.  Plaintiff has done little more, however,

than insert the word "intentionally" into its Complaint.  (Cmplt. at ¶ 37 ("[Interpublic]

intentionally induced Miknas and Salameh to breach the Agreement").)  Plaintiff fails to

allege any facts explaining how Interpublic intentionally sought to cause a breach, or,

indeed, exactly what action Interpublic took that caused a breach.

"[T]he legal sufficiency of a complaint [for tortious interference] requires

more than mere conclusions." *Martin* v. *Fed. Life Ins. Co.*, 440 N.E.2d 998, 1007 (Ill.

App. Ct. 1982).  Without a "factual statement showing such purpose or intent[,]" an

allegation of intent "is a conclusion" and is insufficient to plead the intentionality element

of tortious interference with contract. *Id.*; *see also Am. States Ins. Co.* v. *Bailey*, 675

N.E.2d 939, 942-43 (Ill. App. Ct. 1996) (dismissing tortious interference claim in part

because plaintiff failed to allege facts showing that defendant "deliberately and

intentionally induced Bailey to breach his contingent fee agreement").

Here, all Plaintiff has alleged is that Interpublic "instructed Miknas and

Salameh not to talk with RFC or Mr. Stepke[.]"  (Cmplt. at ¶ 36.)  Plaintiff does not – and

cannot – allege that Interpublic controlled Miknas and Salameh and therefore caused a

breach; consequently, even if Interpublic did issue such an "instruction," it is not

sufficient for pleading the intentional inducement element of tortious interference. *See*

*Exch. Nat'l Bank*, 438 N.E.2d at 1249-50 (dismissing tortious interference claim in part

because plaintiffs had failed to plead facts "indicating how any of the defendants exerted

influence" on purportedly breaching third parties). Plaintiff does not allege how Interpublic's alleged "instruction" was conveyed or what Miknas and Salameh did in response to it. (Cmplt. at ¶¶ 24, 36.) And, having alleged that it performed its obligations under the Agreement (*see id.* at ¶ 29), Plaintiff can hardly claim in the same breath that Interpublic's "instruction" somehow prevented it from performing.

Moreover, the only motive Plaintiff offers for Interpublic's alleged inducement of breach is "to avoid any further competition from other potential investors." (Cmplt. at ¶ 36.) This argument also defies common sense. Even with Plaintiff out of the picture, there was nothing to stop Miknas and Salameh from walking away from the Interpublic offer and trying to sell their shares to other parties – or, for that matter, trying to join with other parties to acquire a greater interest instead. But as Plaintiff freely admits, for any effort by Miknas and Salameh to sell their interest, Interpublic would have the right of first refusal. (*Id.* at ¶ 15.) All Interpublic did here was exercise that right. It cannot be the case that, because Plaintiff entered into the Agreement with Miknas and Salameh, *Interpublic* somehow waived its right of first refusal or took on the additional obligation of having to do all of its transactions through RFC. *See Kessinger* v. *Grefco, Inc.*, 875 F.2d 153, 155 (7th Cir. 1989) (noting "the well-established proposition[] … that nonparties to a contract are [not] bound by the contract").

Under *Twombly*, a Plaintiff cannot plead conclusions, then hope that discovery will yield facts that will support them. *Twombly*, 127 S.Ct. at 1959 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaints allegations are true"). Because Plaintiff's claim

against Interpublic is based exclusively on such conclusions, it should be dismissed. *Am. States Ins. Co.*, 675 N.E.2d at 942-43.

II.    **Discovery Should Be Stayed Pending the Outcome of Interpublic's Request for Dismissal Under Federal Rule 12(b)(6)**

The Court "has discretion under Fed. R. Civ. P. 26(c) and (d) to limit the scope of discovery or to order that discovery be conducted in a particular sequence." *Builders Ass'n of Greater Chicago* v. *City of Chicago*, 170 F.R.D. 435, 437 (N.D. Ill. 1996); *see also Crawford-El* v. *Britton*, 523 U.S. 574, 598 (1998) (noting the extremely broad discretion of courts in supervising discovery). Such discretion includes the power to stay discovery pending the outcome of Interpublic's motion to dismiss. "Stays of discovery are not disfavored and are often appropriate where the motion to dismiss can resolve the case – at least as to the moving party[.]" *Bilal* v. *Wolf*, No. 06 C 6978, 2007 WL 1687253, at *1 (N.D. Ill. June 6, 2007) (citations omitted). Such stays are frequently issued by courts in this district.[5]

Where any discovery a plaintiff might obtain "is unlikely to produce facts necessary to defeat the motion[,]" a stay should be granted. *Sprague*, 149 F.R.D. at 577

---

[5] *See, e.g., Moline* v. *Trans Union, L.L.C.*, 224 F.R.D. 346, 348 (N.D. Ill. 2004) (noting district court's granting of discovery stay during pendency of defendant's motion to dismiss); *Cataldo* v. *City of Chicago*, No. 01 C 6665, 2002 WL 91903, at *2 (N.D. Ill. Jan. 24, 2002) (finding stay of discovery pending outcome of motion to dismiss "appropriate"); *Hill* v. *Amoco Oil Co.*, No. 97 C 7501, 2001 WL 2923628, at *6 (N.D. Ill. Mar. 19, 2001) (noting 18-month stay of discovery pending litigation of a motion to dismiss); *Cemail* v. *Viking Dodge, Inc.*, No. 97 C 908, 1997 WL 359962, at *1 (N.D. Ill. June 17, 1997) (granting discovery stay pending motion to dismiss); *Peregrine Options, Inc.* v. *Farley, Inc.*, No. 90 C 0285, 1993 WL 78646, at *1 (N.D. Ill. Mar. 18, 1993) (noting stay of discovery pending motion to dismiss and commenting that there are "many cases where the courts find that, under the specific circumstances of that case, continuing a stay on discovery is appropriate"); *Sprague* v. *Brook*, 149 F.R.D. 575, 578 (N.D. Ill. 1993) (granting stay of discovery while motion to dismiss was pending).

(citing *First Nat'l Bank of Ariz.* v. *Cities Serv. Co.*, 391 U.S. 253 (1968)). A court should also be concerned with ensuring "the just, *speedy* and *inexpensive* determination of every action." *Id.* at 578 (quoting *Chagnon* v. *Bell*, 642 F.2d 1248 (D.C. Cir. 1980), *cert. denied*, 453 U.S. 911 (1981)) (internal quotation marks omitted) (emphasis in original).

Here, Interpublic's motion to dismiss – and, indeed, Plaintiff's claim for tortious interference with contract – turns on the Court's reading of the plain language of the Agreement. *See* pp. 7-11, *supra*. No amount of discovery will change that language. Where, as here, the material facts are not in dispute – after all, the Agreement says what it says – the Court should not hesitate to issue a stay. *See Stokes* v. *City of Chicago*, No. 86 C 4759, 1986 WL 12311, at *1 (N.D. Ill. Oct. 24, 1986) ("A stay of discovery pending resolution of a motion to dismiss avoids unnecessary discovery in the event the motion is granted") (citation omitted); *accord Walsh* v. *Heilmann*, 472 F.3d 504, 505 (7th Cir. 2006). Plaintiff is not entitled to use discovery to shore up his conclusory allegations concerning Interpublic's purported intentional inducement of a breach. *See First Nat'l Bank of Ariz.*, 391 U.S. at 298 (1968) (limitations on discovery are permitted where requested discovery would be tantamount to a fishing expedition).

Moreover, the balance of harms strongly favors a stay. If discovery commences, Interpublic will potentially be burdened with considerable costs; for example, much of the relevant evidence and several of the key witnesses, including Miknas and Salameh, are located in the United Arab Emirates and Bahrain. (*See* Cmplt. at ¶¶ 3-4). If discovery is stayed, however, the prejudice to Plaintiff is minimal. Plaintiff does not allege that it is the victim of an ongoing injury that will continue to harm it while it awaits discovery. Plaintiff simply cannot demonstrate a pressing need for

immediate discovery in this case. *See Cataldo*, 2002 WL 91903, at *2 (finding stay appropriate where discovery would impose considerable costs on defendant); *Cemail*, 1997 WL 359962, at *1 (granting discovery stay where discovery was likely "extensive" and motion to dismiss pendency would only necessitate "a brief delay"); *cf. Cohen* v. *Taco Bell Corp.*, 147 F.R.D. 154, 161-62 (N.D. Ill. 1993) (denying stay of discovery where motion to dismiss would not dispose of the entire case even if resolved in favor of defendant).

### III.    In the Alternative, This Litigation Should Be Stayed Pending Resolution of Plaintiff's Arbitration with Defendants Miknas and Salameh

Plaintiff now has indicated its intent to arbitrate its breach of contract claim against Miknas and Salameh. Should this Court decide not to dismiss the claim against Interpublic, it should stay these proceedings pending this arbitration.

This Court clearly has the power to stay these proceedings while a dispositive arbitration occurs. *See, e.g., Halim* v. *Great Gatsby's Auction Gallery*, 516 F.3d 557, 560 (7th Cir. 2008) (noting power of court to stay litigation proceedings pending dispositive arbitration). If Plaintiff wins its arbitration and proves that it is entitled to be paid a commission in connection with the Interpublic Deal, it will be awarded this commission by the arbitrator and thus will not have any damages to collect from Interpublic. If Plaintiff loses the arbitration because it fails to prove that it earned a commission under the Agreement for the Interpublic Deal, then Plaintiff certainly cannot turn around and seek that commission from Interpublic, since as a matter of law it would not be entitled to it. Either way, Plaintiff's arbitration with Miknas and Salameh supersedes and disposes of any claim it has against Interpublic.

In addition, under principles of collateral estoppel, Plaintiff will be bound by findings made in the arbitration, so that the parties may not need to litigate those issues in this Court. *See, e.g., King* v. *Burlington Northern and Santa Fe Ry. Co.*, 445 F. Supp. 2d 964, 976 (N.D. Ill. 2006) (collateral estoppel precluded plaintiff from claim determined in arbitration proceeding). For all of these reasons, if the claim against Interpublic is not dismissed, a stay pending arbitration will likely dispose of and simplify this case.

## CONCLUSION

For the foregoing reasons, we respectfully submit that this Court should: (1) stay discovery pending resolution of this motion to dismiss; and (2) dismiss Plaintiff's claim against Interpublic with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. If the action is not dismissed, it should in the alternative be stayed pending the arbitration between Plaintiff and the individual Defendants.


Dated:  August 14, 2008

Respectfully submitted,

THE INTERPUBLIC GROUP OF
COMPANIES, INC.

s/ Brandon C. Prosansky
Brandon C. Prosansky
One of Its Attorneys


Robert E. Shapiro
Brandon C. Prosansky
BARACK FERRAZZANO
KIRSCHBAUM
 & NAGELBERG LLP
200 West Madison Street
Suite 3900
Chicago, IL 60606
(312) 984-3100

Of Counsel
Lewis R. Clayton
Samuel E. Bonderoff
PAUL, WEISS, RIFKIND, WHARTON,
 & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3222

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing **Defendant Interpublic Groupf of Companies, Inc.'s Memorandum of Law in Support of Its Motion To Dismiss and To Stay Discovery** was served upon the attorneys listed below electronically through CM/ECF on August 14, 2008:

| | |
|---|---|
| **William M. McErlean** | **Timothy James Carey** |
| **Charla Lynn Hausler** | **Brigitte T. Nuss Kocheny** |
| Barnes & Thornburg LLP | **Joanna Collias** |
| One North Wacker Drive | Dewey & LeBoeuf LLP |
| Suite 4400 | Two Prudential Plaza |
| Chicago, IL 60606 | 180 North Stetson Avenue |
| | Suite 3700 |
| | Chicago, IL 60601 |

s/  Brandon C. Prosansky

515586_1.DOC