IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RESOURCE FINANCIAL CORPORATION, an Illinois Corporation,<br><br>Plaintiff,<br><br>-vs-<br><br>THE INTERPUBLIC GROUP OF COMPANIES, INC., a Delaware Corporation, AKRAM MIKNAS, an Individual, and FADI SALAMEH, an Individual,<br><br>Defendants. | No: 08 CV 3331<br><br>Judge Matthew F. Kennelly<br><br>Magistrate Judge Ashman<br><br>Jury Trial Demanded |

## FIRST AMENDED COMPLAINT

Plaintiff, Resource Financial Corporation ("RFC"), for its First Amended Complaint against the Defendants, The Interpublic Group of Companies, Inc. ("IPG"), Akram Miknas ("Miknas"), and Fadi Salameh ("Salameh") (collectively referred to as "Defendants"), states as follows:

### PARTIES

1. Resource Financial Corporation is an Illinois corporation with its principal place of business in Chicago, Illinois. RFC is an investment banking firm specializing in providing strategic planning, financial advisory, investment banking, and corporate financial services with respect to acquisition search, deal and financial structuring, and finance placement.

2. IPG is a Delaware corporation with its principal place of business in New York, New York. IPG is a publicly held global advertising and marketing services company. IPG covers a range of marketing disciplines and specialties, from consumer advertising, direct marketing, to mobile and search engine marketing.

3. Miknas is an individual, and is a citizen of the Kingdom of Bahrain.

4.     Salameh is an individual, and is a citizen of Lebanon.

## JURISDICTION AND VENUE

5.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332(a). The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens in different states and in which citizens who are subjects of a foreign state are additional parties, as RFC is an Illinois corporation with its principal place of business in Illinois, IPG is a Delaware corporation with its principal place of business in New York, and Miknas and Salameh are foreign residents.

6.     This Court has personal jurisdiction over IPG, Miknas and Salameh, and venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(2), as the Northern District of Illinois is a district in which a substantial part of events or omissions giving rise to the claim occurred.

## NATURE OF ACTION

7.     This is an action arising out of the unlawful conduct of Salameh, Miknas, and IPG, which culminated with the intentional breach by Salameh and Miknas of an Engagement Agreement (the "Agreement") with RFC, in which RFC agreed to act in a financial advisory and investment banking capacity to assist Miknas and Salameh in acquiring 100% of the issued and outstanding stock of Middle East Communication Networks Company W.L.L. ("MCN") and, thereafter, in acquiring the interests of certain minority interests in MCN subsidiaries and affiliates ("Minority Interests") as well as other private companies currently unrelated to MCN ("Targets"). IPG acted unlawfully by intentionally and tortiously interfering with the Agreement to induce and cause a breach of the Agreement.

8.     Under the Agreement, Salameh and Miknas agreed to use RFC as their exclusive agent to represent them in negotiating, structuring, financing and finalizing a transaction where

100% of MCN would be acquired with an investor owning 51%, Miknas 34% and Salameh 15%.

9. RFC performed its obligations under the Agreement and, as a direct result of RFC's efforts, potential purchasers were identified by RFC and expressed substantial interest in acquiring MCN, substantially increasing the valuation of MCN in the market. Once the market valuation was increased due to RFC's efforts, Miknas and Salameh intentionally breached the Agreement by entering into a deal directly with IPG, wherein IPG obtained a 51% interest in MCN and MCN was valued at $250 million (the "IPG Deal"). Miknas and Salameh could not have secured the terms of the IPG Deal without RFC's efforts.

10. The IPG Deal is identical in structure to the deal outlined in the Agreement. Miknas and Salameh, however, at IPG's request and direction, excluded RFC from negotiating with IPG and did not use RFC to negotiate, structure, finance or finalize the IPG Deal, as required under the terms of the Agreement. Miknas and Salameh intentionally breached the Agreement by excluding RFC from negotiations with IPG and not using RFC as the exclusive agent for negotiating, structuring, financing and finalizing the IPG deal.

11. IPG knew of the Agreement between Miknas, Salameh and RFC. IPG, however, intentionally interfered with the Agreement in order to obtain MCN for itself and to preclude further competition for MCN. IPG intentionally excluded RFC from a meeting wherein IPG made an offer to acquire a 51% interest in MCN, based on a valuation of MCN at $250 million. IPG made this offer with full knowledge that RFC was acting as the exclusive agent of Salameh and Miknas in order to negotiate, structure, finance, and finalize such a deal. IPG, however, induced Miknas and Salameh to breach the Agreement with RFC and sell the 51% interest in MCN directly to IPG, without the involvement of RFC.

12. As a result of the Defendants' unlawful conduct, RFC has suffered damages in

3

excess of $75,000.00.

## FACTS COMMON TO ALL COUNTS

13.     On April 26, 2007, Salameh contacted Russell Stepke, a principal of RFC, to arrange a meeting in Chicago regarding potential business transactions and opportunities.

14.     On May 6, 2007, Salameh met with Mr. Stepke in Chicago. He informed Mr. Stepke that he and Miknas were majority shareholders in MCN, with Miknas being the controlling shareholder. At this meeting, Salameh explained that he was seeking to sell substantially all of his stock in MCN, and that the controlling shareholder, Miknas, was willing to allow him to sell.

15.     After the May 6, 2007 meeting, Mr. Stepke on behalf of RFC contacted investors to determine whether there was interest in buying Salameh's shares in MCN. RFC identified a potential investor, NBD Sana. Over the course of the next several months, NBD Sana and MCN exchanged information, wherein it was confirmed that Salameh owned 24.6% of MCN and Miknas held 55.4% of MCN, and that IPG held 19.9%. In addition, it was learned that IPG had a right of first refusal on the sale of Miknas' and Salameh's MCN stock. IPG's right of first refusal posed a potential barrier to obtaining serious offers for MCN stock or offers that were not undervalued.

16.     To unlock the value of the stock, RFC suggested that Salameh and Miknas join with NBD Sana in forming a new corporation to acquire 100% of the issued and outstanding capital stock of MCN, to which they agreed. Ultimately, however, negotiations failed and the proposed transaction with NBD Sana did not materialize.

17.     On January 6, 2008, Salameh and Miknas discussed with Mr. Stepke, who was in Chicago, the possibility of RFC representing their interests in a potential transaction, which was akin to the one that had been proposed with NBD Sana, where Salameh, Miknas, and an investor,

would join together to acquire 100% of MCN, with the investor owning 51% of the new company, Miknas 34%, and Salameh 15%. The parties ultimately agreed to the representation and agreed to the basic terms of the representation.

18.     On January 17, 2008, the terms of the parties' agreement were finalized. It was agreed that RFC would reduce the agreement to writing and tender the agreement to Salameh and Miknas. Under the agreement, Salameh and Miknas agreed to pay an initial and monthly retainers. Salameh and Miknas also agreed to pay "Success Fees" based on the total agreed consideration of any transaction.

19.     RFC drafted the Agreement in Chicago and it was made effective on January 28, 2008. A copy of the Agreement is attached hereto as Exhibit A. Upon the execution of the Agreement, Salameh and Miknas paid a $25,000 retainer to RFC pursuant to the terms of the Agreement. Payment of the retainer was made to RFC in Chicago.

20.     RFC immediately began performing its obligations under the Agreement by soliciting potential private equity firms to invest in a deal with MCN. RFC's efforts produced interest in the transaction and RFC, in fact, obtained a proposal for the potential transaction valuing MCN at $250 million.

21.     On February 15, 2008, IPG made an offer to Salameh and Miknas, which valued MCN at $200 million. The offer was unsatisfactory to Salameh and Miknas, as it reflected an undervaluation of MCN.

22.     On March 1, 2008, Mr. Stepke met with Salameh, Miknas, Peter Davies, and Mohammed Dadabhai (MCN CFO), to discuss the proposals and other potential investors that may be interested in acquiring a 51% interest in MCN. Salameh, Miknas and Dadabhai suggested meeting with IPG to discuss IPG as a possible party to the transaction. Salameh and

Miknas told Mr. Stepke that, at the meeting with IPG, they wanted him to deliver to IPG a current proposal from another potential investor that valued MCN at $250 million, with the intention of causing IPG to offer a proposal along the same terms. Salameh and Miknas stated that they wanted Mr. Stepke to deliver this proposal to IPG at a meeting which they had scheduled the next day with Jon Burleigh (the head of M&A at IPG).

23. On March 2, 2008, Mr. Stepke, at Salameh's direction, showed Burleigh the investors' term sheet, valuing MCN at $250 million. Subsequent to tendering the investors' term sheet to Burleigh, the meeting was adjourned.

24. After the March 2, 2008 meeting, Mr. Stepke sent numerous emails and made numerous phone calls to Salameh and Miknas to continue to negotiate a deal with IPG. Salameh and Miknas never responded. Michael Roth (IPG Chairman and COO) as well as Burleigh had told Salameh and Miknas that they did not want Mr. Stepke to be part of the meeting, and that Mr. Stepke would no longer be needed.

25. During the course of the March 2008 meetings, from which Mr. Stepke was excluded, IPG made an offer to acquire 51% interest in MCN, which offer valued MCN at $250 million. The offer was accepted by Salameh and Miknas. The structure of the IPG deal was identical to the proposed deal structured by RFC under the Agreement. Salameh and Miknas obtained a high valuation for MCN in the IPG Deal. This significant valuation of MCN was a direct result of RFC's efforts under the Agreement.

26. Based on the unlawful and improper conduct of Salameh and Miknas and IPG, Salameh and Miknas breached the Agreement. As a result of the breach, RFC suffered damages in excess of $75,000.00.

## COUNT I - BREACH OF CONTRACT
## AGAINST SALAMEH AND MIKNAS

27.　RFC restates and realleges the allegations set forth in Paragraphs 1 through 26 above, as if fully set forth herein.

28.　The Agreement is a valid and enforceable agreement entered into between RFC, Salameh, and Miknas.

29.　RFC performed its obligations under the Agreement.

30.　The Agreement provided that Salameh and Miknas would use RFC as exclusive agent for Miknas and Salameh and a third-party investor to acquire 100% of the issued and outstanding stock of MCN. Salameh and Miknas agreed to use RFC as the exclusive agent to negotiate, structure, finance and finalize any such transaction. Salameh and Miknas breached the Agreement by entering into the IPG deal with IPG directly and intentionally excluding RFC from the negotiations, structuring, financing and finalization of the IPG Deal.

31.　As a result of Salameh's and Miknas's breach, RFC suffered damages in excess of $75,000.00.

WHEREFORE, Plaintiff, Resource Financial Corporation, Inc., requests this Court to enter judgment in its favor and against Defendants, Fadi Salameh and Akram Miknas, in an amount in excess of $75,000.00, plus interest, and such other relief as this Court deems fair and just.

## COUNT II - TORTIOUS INTERFERENCE WITH CONTRACT
## AGAINST IPG

32.　RFC restates and realleges the allegations set forth in Paragraphs 1 through 31 above, as if fully set forth herein.

33.　At all times relevant herein, there existed a valid, enforceable agreement between RFC and Salameh and Miknas, which required that Salameh and Miknas use RFC as the

7

exclusive agent to negotiate, structure, finance and finalize any deal involving the acquisition of a majority interest in MCN.

34. IPG knew of the Agreement between Miknas, Salameh, and RFC, and knew that RFC was acting as the exclusive agent in negotiating, structuring, financing and finalizing a stock purchase of MCN.

35. In fact, on March 2, 2008, IPG attended a meeting with Salameh, Miknas, and Mr. Stepke of RFC, to discuss a potential transaction involving MCN. At this meeting, RFC was acting as the exclusive agent in negotiating and structuring any deal involving MCN.

36. After that meeting, IPG instructed Miknas and Salameh not to talk with RFC or Mr. Stepke, in order to obtain a 51% interest in MCN itself and to avoid any further competition from other potential investors.

37. By excluding RFC from negotiations involving a stock purchase of MCN and to obtain MCN for itself without any further outside competition, IPG intentionally induced Miknas and Salameh to breach the Agreement without justification or privilege. As a result of IPG's intentional exclusion of RFC in the IPG Deal, IPG directly and proximately induced and caused a breach of the Agreement by Miknas and Salameh.

38. IPG's inducement of Miknas and Salameh to breach the Agreement has caused RFC damages in excess of $75,000.00.

WHEREFORE, Plaintiff, Resource Financial Corporation, Inc., requests this Court to enter and Order in its favor and against Defendant, The Interpublic Group of Companies, Inc., in an amount in excess of $75,000.00, plus interest, and such other relief as this Court deems fair and just.

RESOURCE FINANCIAL CORPORATION, INC.

By:   /s/ William M. McErlean
         One of its Attorneys

William M. McErlean
Charla L. Hausler
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, Illinois 60606
(312) 357-1313

CHDS01 CUH 467291v2

9

# EXHIBIT A

EXHIBIT "A"



550 West Van Buren, Suite 1410
Chicago, Illinois 60607
Phone: (312) 525-2600
Fax: (312) 525-2610
www.resource-financial.com

January 28, 2008

*Private & Confidential*

Mr. Akram Miknas
Mr. Fadi Salameh
c/o Middle East Communications Network
4th Floor – Wing B
Ematat Atrium Building
Sheikh Zayed Road
Dubai, U.A.E.

RE: Revised Engagement Agreement

Gentlemen:

Resource Financial Corporation ("RFC") proposes to act in financial advisory and investment banking capacity to assist Akram Miknas, Fadi Salameh and a third party investor d/b/a "P7 Holdings, Inc.," a to be formed Bahrainian company (collectively referred to hereinafter as "P7") in acquiring 100% of the issued and outstanding stock of Middle East Communication Networks Company W.L.L. ("MCN") and, thereafter, in acquiring, whether for cash or stock, the interests of certain minority interests in MCN subsidiaries and affiliates ("Minority Interests") as well as other private companies currently unrelated to MCN ("Targets").

RFC is an investment banking firm specializing in providing strategic planning, financial advisory, investment banking and corporate finance services with respect to acquisition search, deal and financial structuring and finance placement. RFC has extensive experience in acquiring companies and has successfully acquired companies that were not actively being marketed for sale at the time of initial contact. Furthermore, RFC has intimate knowledge of MCN and believes it can be of

Case 1:08-cv-03331   Document 30   Filed 08/15/2008   Page 12 of 16
31/01/2008  17:34  043432719        MCN
Case 1:08-cv-03331   Document 24   Filed 08/05/2008   Page 2 of 6

Mr. Akram Miknas
Mr. Fadi Salameh
January 28, 2008
Page 2 of 6

significant aid to P7 in investing in and acquiring MCN, the Minority Interests and the Targets.

## AGREEMENT

RFC agrees to assist P7 for the following purposes:

1. Developing a valuation and deal structure for purposes of acquiring MCN ("First Transaction" or "T1");

2. Assisting P7 in structuring and negotiating T1 through to a Letter of Intent, the terms and conditions of which are acceptable to MCN's shareholders; and

3. Developing, structuring, negotiating and arranging financing required to complete T1; and

4. Advising P7 on closing the Transaction, including administration of the closing process; and

5. Following completion of T1, develop the "MI Rollup Plan," including valuations of the MIs to be rolled up (the "Second Transaction" or "T2"); and

6. Negotiate, structure, finance and finalize T2;

7. Assist P7 in acquiring one or more Targets ("Third Transaction" or "T3"), including the negotiations, structuring, financing and finalizing of T3; and

8. Advise P7 on the possible sale of MCN post-T1, and T2 (and T3, if completed before sale) ("Fourth Transaction" or "T4").

9. Together, T1, T2, T3 and T4 are herein collectively referred to as the "Transactions."

P7 agrees to employ RFC as an exclusive agent for the purposes herein set forth and, further to compensate RFC as follows:

Case 1:08-cv-03331   Document 30   Filed 08/15/2008   Page 13 of 16
31/01/2008  17:34  043432719   MCN   PAGE  04
Case 1:08-cv-03331   Document 24   Filed 08/05/2008   Page 3 of 6

Mr. Akram Miknas
Mr. Fadi Salameh
January 28, 2008
Page 3 of 6

1. <u>Term.</u> The term of this Agreement shall be for a period of twelve (12) months, terminable by P7 at anytime after the initial three months (the "Initial Term") and upon thirty (30) days advanced written notice. Unless otherwise terminated, this Agreement shall extend from month to month at the end of the initial term.

2. <u>Initial Retainer.</u> Upon the execution of this Agreement, P7 shall pay to RFC an initial retainer of $25,000.

3. <u>Monthly Retainers.</u> On each monthly anniversary date during the term hereof until T1 is closed or abandoned, a monthly retainer in the amount of $25,000. Thereafter, if P7 elects to continue employing RFC for purposes of T2, T3 and/or T4, a monthly retainer of $25,000 will continue until the contemplated transaction is closed or abandoned.

4. <u>Success Fees.</u> After credit for previously paid retainers, and subject to the conditions set forth below, the compensation due via wire transfer simultaneous to and conditioned upon a closing of a Transaction shall be as follows:

| Total Agreed Transaction Consideration | |
|---|---|
| To US$10 million | 5.0%, Plus |
| Above US$10.0 million to US$50.0 million | 3.0% |
| Above US$50.0 million to US$100.0 million | 2.0% |
| Above US$100.0 million to US$300.0 million | 1.0% |
| Above US$300.0 million | 0.5% |

A. <u>Messrs. Miknas and Salameh Control.</u> Compensation due RFC in a transaction involving the acquisition of MCN by P7 where the controlling interest in P7 is owned by Messrs. Miknas and Salameh shall be the greater of $750,000 or 1% of the total value of the cash disbursed at closing provided, however, in the event the fee is the minimum fee of $750,000, P7 shall have a $120,000 credit on any and all fees that may come due RFC as a result of T4.

Mr. Akram Miknas
Mr. Fadi Salameh
January 28, 2008
Page 4 of 6

    B. <u>T1 with investor controlling P7</u>. In the event of a transaction involving investor control of P7 immediately following the closing of T1, fee compensation based upon the above schedule.

    C. <u>T2 and T3 transactions</u>. Commercially reasonable fees with respect to T2 and T3 transactions are to be agreed upon prior to RFC's beginning such assignments.

    D. <u>T4</u>. Per the above schedule subject to the possible credit for T1 fees as aforestated.

5. <u>Miscellaneous Terms</u>.

    A. In addition to Success Fees above enumerated, and not contingent upon completion of the Transactions, P7 will reimburse RFC for all of RFC's reasonable out-of-pocket expenses, including communications, database and research charges, travel, housing, printing and other related expenses upon presentation of an invoice therefore.

    B. The term of this Engagement Agreement is as above set forth, however, P7 may terminate RFC's services at any time after three (3) months from the date hereof, upon thirty (30) days advance written notice; provided, however, P7 shall remain obligated to pay RFC the fees described above should a Transaction occur within eighteen (18) months of termination involving MCN employing the financing structure and sources developed by RFC.

    C. The termination of RFC's services herein shall not release MCN from its obligation to pay the retainer due through the date of termination as set forth above, or to reimburse out-of-pocket expenses through the date of such termination, and all other obligations herein described.

    D. Should a Transaction be consummated, RFC may include, at its expense, a tombstone or similar promotional notice in selected periodicals.

    E. This Engagement Agreement will be governed and construed in accordance with the laws of England and Wales, which laws will be

Case 1:08-cv-03331   Document 30   Filed 08/15/2008   Page 15 of 16
31/01/2008 17:34  843432719                MON                              PAGE 06
Case 1:08-cv-03331   Document 24   Filed 08/05/2008   Page 5 of 6

Mr. Akram Miknas
Mr. Fadi Salameh
January 28, 2008
Page 5 of 6

binding upon, inure to the benefit of, and be enforceable by the parties or their respective successors.

F. Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination shall be referred to and finally resolved by arbitration under the London Court of International Arbitration (LCIA) Rules, which Rules are deemed to be incorporated by reference into this clause

   (i) The number of arbitrators shall be one.
   (ii) The place of arbitration shall be London, England.
   (iii) The language to be used in the arbitral proceedings shall be English.
   (iv) The governing law of the Agreement, as above stated, shall be the substantive law of England and Wales.

G. P7, for its part, agrees to provide RFC with reasonable cooperation and assistance in the discharge of its duties as herein described.

(This space left intentionally blank.)

Case 1:08-cv-03331   Document 30   Filed 08/15/2008   Page 16 of 16
31/01/2008   17:34   043432719   MCN   PAGE   07
Case 1:08-cv-03331   Document 24   Filed 08/05/2008   Page 6 of 6

Mr. Akram Miknas
Mr. Fadi Salameh
January 28, 2008
Page 6 of 6

If the above and foregoing correctly represents an acceptable Agreement, please execute the enclosed duplicate original of the same and return to the undersigned. At the time RFC receives an executed copy of this Agreement together with the Initial Retainer of $25,000, it will begin its activities on P7's behalf. We look forward to working with P7 to complete the Transactions.

RESOURCE FINANCIAL CORPORATION

By: _____
(authorized signature)

ACCEPTED and agreed to this
30 day of January, 2008.

_____
AKRAM MIKNAS

_____
FADI SALAMEH

573-25