IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RESOURCE FINANCIAL CORP.,            )
                                      )
        Plaintiff,                    )
                                      )
    vs.                               )   Case No.  08 C 3331
                                      )
THE INTERPUBLIC GROUP OF              )
COMPANIES, INC., AKRAM MIKNAS,        )
and FADI SALAMEH,                     )
                                      )
        Defendants.                   )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Resource Financial Corp. (RFC) has sued The Interpublic Group of Companies, Inc. (IGC) for tortious interference with a contractual relationship. IGC has moved to dismiss RFC's claims. In the alternative, IGC requests that the Court stay proceeding on RFC's claim pending the outcome of a related arbitration between RFC and Akram Miknas and Fadi Salameh before the London Court of International Arbitration. For the reasons set forth below, the Court grants the motion to dismiss.

### Facts

When considering a motion to dismiss, the Court accepts as true the complaint's factual allegations and draws reasonable inferences in favor of the plaintiff. *See, e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 617 (7th Cir. 2007). The Court treats exhibits to a complaint as part of the complaint. Fed. R. Civ. P. 10(c).

In 2007, IGC owned 19.9% of a company, MCN. The rest of MCN was owned

by two individuals, Miknas and Salameh. Miknas and Salameh entered into a contract with RFC dated January 28, 2008, under which Miknas and Salameh, along with a to-be-determined third party, would acquire a 100% interest in MCN (the Contract). The Contract is attached to RFC's amended complaint as Exhibit A. The prefatory language to the Contract states that RFC would "act in a financial advisory and investment banking capacity to assist Akram Miknas, Fadi Salameh and a third party investor . . . **in acquiring 100% of the issued and outstanding stock of [MCN]**." Am. Compl. Ex. A at 1 (emphasis added). Under the Contract, RFC was the exclusive agent for the purposes set forth in the Contract, including "Developing a valuation and deal structure for purposes of **acquiring** MCN." *Id.* at 2 (emphasis added).

When entering the Contract, RFC was aware that IGC had a right of first refusal regarding any direct sale by Miknas or Salameh of their MCN stock. To get around this problem and to maximize the sale price of MCN, the Contract appeared to envision a situation where a new company, P7, would purchase 100% of MCN's stock. In return, Miknas and Salameh agreed to pay RFC a monthly retainer and a success fee based on the final value of P7's purchase of MCN and how much of P7 Miknas and Salameh owned. The Contract is silent regarding the possibility of a direct sale of stock by Miknas and Salameh to IGC.

After the Contract was executed, RFC began to perform its obligations by soliciting potential investors for the acquisition of MCN. About that time, IGC made an offer to purchase MCN valued at $200 million. That offer was rejected, and RFC prepared a term sheet valuing MCN at $250 million. RFC provided the term sheet to

IGC at Salameh's request. IGC then instructed Miknas and Salameh that it did not want RFC to be part of any further meetings with IGC and instructed them not to talk with RFC. After these instructions, Miknas and Salameh would not respond to communications from RFC, and RFC was excluded from any further negotiations. Eventually a deal was closed between Miknas, Salameh and IGC that valued MCN at $250 million.

RFC alleges that IGC was aware of the terms of the Contract. RFC also alleges that "Salameh and Miknas breached the Agreement by entering into the IPG deal with IPG directly and intentionally excluding RFC from the negotiations, structuring, financing and finalization of the IPG Deal." Am. Compl. ¶ 30.

## Discussion

The Seventh Circuit has emphasized that, even after the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955 (2007), federal courts continue to adhere to a notice-pleading standard. *E.g.*, *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083-83 (7th Cir. 2008). "A plaintiff must still provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. . . ." *Id.* at 1083 (quotation omitted). To succeed on a claim for tortious interference with contract, a plaintiff must show:

> (1) the existence of a valid, enforceable contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional and unjustified inducement of the third party to breach the contract; (4) occurrence of a breach resulting from defendant's conduct; (5) damages. . . .

3

*Guice v. Sentinel Techs., Inc.*, 294 Ill. App. 3d 97, 102, 689 N.E.2d 355, 359 (1997).[1] IGC argues that RFC has not sufficiently alleged elements three and four.

1. **Intentional inducement**

The attack on RFC's efforts to plead intentional inducement fails. RFC clearly states that IGC "instructed Miknas and Salameh not to talk with RFC or [its agent], in order to obtain a 51% interest in MCN itself and to avoid any further competition from other potential investors." Am. Compl. ¶ 36. RFC also claims that IGC worked with Salameh and Miknas to keep RFC out of any further negotiations. These allegations are sufficient to state the intentional inducement element of a claim for tortious interference, particularly under the notice pleading standards applicable in federal court.

2. **Breach**

IGC first argues that there was no breach of contract because a condition precedent to the Contract, the formation of P7, did not occur. It does not appear, however, that formation of P7 was, in fact, a condition precedent. "A condition precedent is an act which one party to a contract must perform before the other party's obligation under the contract begins." *Mijes v. Primerica Life Ins. Co.*, 317 Ill. App. 3d 1097, 1100, 740 N.E.2d 1160, 1163 (2000). The non-formation of P7 did not stop the parties from beginning to perform their respective obligations. RFC attempted to secure investors for the ultimate transaction, prepared term sheets, and was otherwise involved in negotiations. Salameh and Miknas paid retainers to RFC as called for in the Contract and worked with RFC in performance of its tasks. Formation of P7 was not a

---

[1] IGC contends that Illinois law applies to RFC's tortious interference claim. RFC has not disputed that contention.

condition precedent to performance; rather, as alleged by RFC, it was one of the actions that would take place once a third investor had been located. The parties to the Contract had no problem initiating their respective performances prior to the formation of P7.

IGC next claims that no breach occurred because Miknas and Salameh sold an interest in MCN directly to IGC and that such a transaction was not controlled by their Contract with RFC. RFC attempts to avoid this argument by contending that the purpose of the Contract was to "increase the valuation of MCN," not to obtain 100% of MCN. Resp. Br. at 5-6. RFC's response, however, ignores the plain language of the Contract. This Court is not bound by RFC's characterizations of the Contract in its complaint; instead, it is appropriate to "independently examine the [Contract] and form . . . conclusions as to the proper construction and meaning to be given the material." *Rosenblum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (quotation omitted). As detailed above, the Contract clearly stated that its purpose was to facilitate acquisition of a 100% interest in MCN. It also detailed a transaction designed to fulfill that goal. The Contract says absolutely nothing, positive or negative, concerning whether Miknas and Salameh could sell their MCN stock in some other manner. The sale of stock to IGC was a direct sale not covered by the Contract; therefore, that sale did not breach the Contract. Though the parties have extensively discussed the affect of IGC's right of first refusal, the fact remains that the sale of Miknas and Salameh's MCN stock was not governed by the Contract – the Contract only controlled a specific type of transaction to effectuate the 100% acquisition of MCN.

5

RFC argues, alternatively, that IGC is the to-be-determined "third party investor" identified in the Contract that would work with Miknas and Salameh to acquire 100% of MCN. This reasoning strips the Contract of its meaning. The stated purpose of the Contract was to acquire 100% of MCN. In fact, Miknas, Salameh, and IGC were already collectively in control of 100% of MCN at the time the Contract was executed. RFC states that "Miknas and Salameh were required to use RFC as the exclusive agent to . . . negotiate a deal with an **outside investor**." Resp. Br. at 8 (emphasis added). If IGC could have been the third party, the Contract would have been fulfilled before it existed, and there would have been no reason for Miknas and Salameh to enter into a contract whose goal was the 100% acquisition of MCN.

RFC suggests it would have been "absurd" for it to enter the Contract if the Contract did not include a stock sale to IGC within its terms. This is, however, precisely what the Contract did under its plain language. Moreover, that fact does not render the Contract absurd. RFC was entitled to large monthly retainer payments even though the contemplated transactions under the Contract did not occur; thus, RFC was entitled to compensation for helping to increase the value of MCN's stock. RFC has never claimed that IGC instructed Miknas and Salameh not to pay RFC amounts it was actually owed under the terms of the Contract.

In sum, RFC has alleged two breaches of the Contract due to IGC's alleged inducement: (1) Miknas and Salameh directly sold MCN stock to IGC; and (2) RFC was excluded from the particulars of that transaction. That transaction, however, simply was

not covered by the plain language of the Contract.[2] The Contract contemplated acquisition of 100% of MCN by Miknas, Salameh, and a third party – not a direct sale of Miknas and Salameh's stock to IGC. Comparing the plain language of the Contract with the allegations of RFC's complaint, RFC has failed to state a claim for tortious interference.

The Court therefore dismisses RFC's claim against IGC, with leave to amend if it can do so. Any new claim for tortious interference with the Contract would need to be based on an actual breach of one or more of Miknas and Salameh's obligations to RFC (e.g., if Miknas and Salameh, based on IGC's instructions, refused to consider a proposed third-party investor identified by RFC in order to avoid a bidding war for MCN or refused to pay compensation due to RFC). The Court does not, of course, rule out the possibility of some other sort of claim by RFC.

**Conclusion**

For the foregoing reasons, the Court grants IGC's motion to dismiss [docket no. 26-1] and denies as moot IGC's motion to stay [docket no. 26-2]. RFC is granted leave to file a second amended complaint on or before November 4, 2008. If RFC does not file a second amended complaint on or before that date, the dismissal of its complaint against IGC will become final and judgment will be entered in favor of IGC. The case is set for status hearing on November 10, 2008 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 21, 2008

---

[2]RFC does not argue that the Contract is ambiguous.